IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLINE JEAN-BAPTISTE : | |
|     Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | No. 22-1719 |
| : | |
| POST COMMERCIAL REAL ESTATE : | |
| LLC, et al., : | |
|     Defendants. : | |

**August 16, 2023**                                          **Anita B. Brody, J.**

## MEMORANDUM

This is an employment discrimination action in which the plaintiff, Caroline Jean-Baptiste, alleges that her employer, defendant Post Commercial Real Estate LLC ("Post"), discriminated against her based on her race and national origin and retaliated against her when she complained. After commencing discovery, Post learned that Jean-Baptiste signed an arbitration agreement as a condition of her employment. It moves to compel arbitration in accordance with that agreement. I have jurisdiction under 28 U.S.C. §§ 1331 and 1367.

**I.   BACKGROUND**

Jean-Baptiste is a Black woman of Haitian national origin. Complaint (ECF 1) ¶¶ 10, 15.[1] She started working at Post, a Philadelphia-based real estate firm, as a Leasing Specialist in February 2012. *Id.* ¶ 14. After six years at the company, she left in 2018—only to return about a year later, in March 2019. *Id.* ¶ 17.

After her return, she claims that her supervisors began to treat her differently than her white

---

[1] All facts are taken from the Complaint unless otherwise noted. Because I evaluate Post's motion to compel arbitration under a motion to dismiss standard, *see infra* Section II.A, I treat the factual allegations in the Complaint as true, *see Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

coworkers. She initially worked at one of Post's properties in Northern Liberties, but Ben Cutler, her supervisor and a white man, allegedly favored her coworker, a white woman. *Id.* ¶¶ 19-20. In November 2019, after several months at the Northern Liberties property, Cutler forced her to transfer to another Post property at lower pay. *Id.* ¶ 21. On July 7, 2020, Jean-Baptiste met with Post's human resources manager to complain about the transfer. *Id.* ¶ 24.

In April 2021, Jean-Baptiste and Cutler had another altercation. *Id.* ¶ 25. Jean-Baptiste was working at her desk alongside another colleague when Cutler entered the room, walked over to her desk, and introduced her to a new manager. *Id.* ¶ 26. Jean-Baptiste made eye contact and said hello to Cutler but made a motion to indicate that she was on a phone call with a client. *Id.* Cutler demanded that Jean-Baptiste greet him and ordered her to pack up her desk and leave the office immediately. *Id.* ¶¶ 26-27. Jean-Baptiste again contacted HR to report the incident. *Id.* ¶ 32.

The next month, Jean-Baptiste met with Post management to ask for a promotion. *Id.* ¶ 34. She noted that several more junior colleagues had been promoted over her. *Id.* ¶¶ 34-37. At the meeting, Post management offered to promote her to a Team Leader position—but only after she completed a thirty-day evaluation period. *Id.* ¶ 38. To Jean-Baptiste's knowledge, Post had not imposed this probationary period on other employees before promoting them. *Id.* The promotion Post offered would also come with another transfer, this time to a smaller and less lucrative property in West Philadelphia. *Id.* ¶¶ 42-43. She again complained to HR. *Id.* ¶ 41.[2]

Jean-Baptiste filed suit in May 2022, bringing race and national origin discrimination and retaliation claims under Title VII, Section 1981, and the PHRA. *Id.* ¶¶ 63-86. Two months later,

---

[2] Jean-Baptiste alleges that several other incidents of disparate treatment occurred during her employment at Post. She claims that one of her managers told another employee that the manager found it "easier to work with the Caucasian agents in the office," *id.* ¶ 46, and that Post denied her adjustments to her work schedule while granting similar adjustments to other employees, *id.* ¶ 48.

2

in July 2022, Post answered the Complaint. *See* Answer (ECF 4) at 12.[3] After an initial scheduling conference, the parties commenced discovery. At some point during discovery, Post discovered that Jean-Baptiste signed two offer letters—one on March 19, 2019 and the other on April 26, 2019—with identical arbitration clauses. Def. Mem. (ECF 11-1) at 5, 7, 14 n.4.[4] The arbitration clause says:

> In the event of any dispute or claim between you and Post Commercial Real Estate (including all of its employees, agents, benefit plans, benefit plans' sponsors, fiduciaries, administrators, affiliates; and all successors and assigns of any of them), we jointly agree to submit all such disputes or claims to confidential binding arbitration and you need to first handle the situation through an arbitrator. The claims and disputes subject to arbitration include all claims arising from or related to your employment or the termination of your employment, including but not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition or disability); claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one); and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance. The arbitration (i) shall be conducted pursuant to the provisions of the arbitration rules of the state in which you are or were last employed by Post Commercial Real Estate (e.g., in Pennsylvania, the PA Arbitration Act) or in absence of state law the Federal Arbitration Act; and (ii) shall be heard before a retired State or Federal judge in the county containing the Company's office in which you were last employed. Post Commercial Real Estate shall pay for all fees and costs of the Arbitrator; however, each party shall pay for its own costs and attorneys' fees, if any.

Def. Mot. Ex. A (ECF 11-2) at 3; Def. Mot. Ex. B (ECF 11-3) at 2-3.

**II.    DISCUSSION**

Post now moves to compel arbitration pursuant to this clause. "To compel arbitration, a court must consider whether (1) valid agreement to arbitrate exists and (2) the particular dispute falls within the scope of that agreement." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (internal quotation marks omitted). "[P]arties have the entire contractual toolbox

---
[3] Citations to page numbers in ECF documents use the ECF pagination, not the pagination in the original document.
[4] Because the clause is the same in both documents, I refer to it as "the arbitration agreement" or "the agreement."

3

available to them to seek to enforce or oppose an arbitration provision." *Id.* at 339. The court "appl[ies] ordinary state-law principles that govern the formation of contracts"—in this case, Pennsylvania law. *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, Jean-Baptiste argues (1) that the arbitration agreement is unconscionable and therefore invalid, and (2) that Post waived its right to pursue arbitration because it did not raise the arbitration agreement at the outset of the case. For the reasons set out below, I will grant Post's motion and compel arbitration.[5]

### A. Legal Standard

As a threshold matter, I must decide whether to evaluate Post's motion under a motion to dismiss or summary judgment standard. Though the parties did not brief the issue, the Third Circuit has held that "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," the court must assess the motion under the summary judgment standard following limited discovery. *Id.*

While Jean-Baptiste does not reference the arbitration agreement in her Complaint, "it is clearly integral to [her] claims." *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315 (E.D. Pa. 2017) (Kelly, J.). Further, "[Post] attached the [arbitration agreement] to its [m]otion, and [Jean-Baptiste] does not contest its authenticity." *Id.*; *see also Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL

---

[5] Because I will compel arbitration, I will also deny Jean-Baptiste's motion to compel as moot and grant Post's motion to vacate the operative scheduling order.

2893350, at *2 (E.D. Pa. Mar. 21, 2016) (McHugh, J.) (applying the motion to dismiss standard because "there is no lack of clarity regarding the agreement to arbitrate, and Plaintiff has not produced any additional facts sufficient to place the agreement to arbitrate at issue"). I therefore evaluate Post's motion to compel arbitration under a motion to dismiss standard. This means that I accept the facts in the Complaint as true and construe them in the light most favorable to the plaintiff, Jean-Baptiste. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).[6] With this standard in mind, I now turn to Jean-Baptiste's objections to the arbitration agreement.

### B. Validity of the Agreement: Unconscionability

Jean-Baptiste argues that the arbitration agreement is invalid because it is unconscionable. Pl. Opp'n (ECF 12) at 5. "To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012). This burden rests with the party seeking to invalidate the agreement. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). Because Jean-Baptiste has failed to show that the agreement is both substantively and procedurally unconscionable, her unconscionability challenge fails.[7]

   *1. Procedural Unconscionability*

"A contract is procedurally unconscionable where there was a lack of meaningful choice

---

[6] I also consider the arbitration agreement in addition to the Complaint and attached exhibits. *Nowak v. Thoroughbred Servs., Inc.*, No. 20-2540, 2021 WL 5937726, at *3 n.1 (E.D. Pa. Dec. 16, 2021) (Brody, J.) ("Because the Arbitration Agreement is integral to [the plaintiff's] claims, and the parties do not dispute the authenticity of the document, it is proper to consider it under Rule 12(b)(6)."); *cf. Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. 19-83, 2019 WL 2077731, at *3 (E.D. Pa. May 10, 2019) (Kearney, J.) (noting that the court "cannot envision a plaintiff choosing to file a complaint in federal court will affirmatively plead the existence of an arbitration provision").

[7] Jean-Baptiste raises no other challenges to the agreement's validity, and the court cannot identify any other contract-formation defects. Jean-Baptiste signed the agreement on two separate occasions, indicating her assent. *See* Def. Mot. Ex. A (ECF 11-2) at 3-4; Def. Mot. Ex. B (ECF 11-3) at 2-3. The terms are clear. *See id.* And the agreement was supported by adequate consideration. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.").

in the acceptance of the challenged provision." *Quilloin*, 673 F.3d at 235 (cleaned up). While "a disparity in bargaining power," standing alone, is insufficient, *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981), courts must still "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). To "distinguish acceptable bargaining situations from those which violate strong public policy," courts consider factors including "the take-it-or-leave-it nature of the standardized form of the document, the parties' relative bargaining positions, and the degree of economic compulsion motivating the adhering party." *Quilloin*, 673 F.3d at 235-36 (cleaned up).

After weighing these factors, I find that the agreement is not procedurally unconscionable. It is no doubt true that Jean-Baptiste was the less powerful party in this employer-employee relationship, and she correctly observes that the agreement "appears to be a form document which was drafted by [Post] and given to all employees." Pl. Opp'n (ECF 12) at 7. But, unlike cases in which the Third Circuit found procedural unconscionability, there is no indication that she has a "limited educational background," *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 266 (3d Cir. 2003), or that she depended on Post for her immigration status, *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 202 (3d Cir. 2010). Instead, the facts before the court point in the opposite direction. Jean-Baptiste was employed in a professional position that required business acumen, s*ee* Complaint (ECF 1) ¶¶ 14, 22, and she signed the agreement after working at Post for several years, leaving the firm, and then choosing to return, *see id.* ¶ 17. These circumstances do not suggest "fraud or overwhelming economic power," *Gilmer*, 500 U.S. at 33, and are therefore insufficient to demonstrate procedural unconscionability.

2. *Substantive Unconscionability*

Though the lack of procedural unconscionability dooms Jean-Baptiste's unconscionability challenge, I will address substantive unconscionability because it is the focus of her briefing. A contract is substantively unconscionable when it includes "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). Jean-Baptiste argues that the agreement is substantively unconscionable because it provides that "each party shall pay for its own costs and attorneys' fees, if any." Def. Mot. Ex. A (ECF 11-2) at 3; Def. Mot. Ex. B (ECF 11-3) at 2-3. This provision, she claims, prevents her from vindicating her statutory right to attorneys' fees under Title VII. Pl. Opp'n (ECF 12) at 7.

Jean-Baptiste is right that "[p]rovisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230-31 (3d Cir. 2012); *see Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 203 (3d Cir. 2010) (finding such a provision substantively unconscionable); *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 279 (3d Cir. 2004) (same). But unconscionable provisions may be severed from arbitration agreements unless "the unconscionable provisions comprise essential aspects of the agreement as a whole" or "the agreement demonstrates that the employer sought to impose arbitration on the employee as an inferior, one-sided forum that worked to the employer's advantage." *Nino*, 609 F.3d at 207.

The provision here is severable. Viewing the agreement as a whole, it is clear that "the primary purpose of the arbitration bargain . . . was not to regulate costs or attorney[s'] fees," but rather "to provide a mechanism to resolve employment-related disputes." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 219 (3d Cir. 2003). Nor does the clause indicate that the employer sought to

7

impose a "baldly one-sided" arbitral forum. *Nino*, 609 F.3d at 207.[8] Where, as here, "disregard of the offending condition[] leaves a fair agreement that will accomplish the primary objective of the parties, enforcement of that agreement will normally be appropriate." *Parilla*, 368 F.3d at 288. I therefore decline to find that the entire arbitration agreement is substantively unconscionable.

### C. Scope of the Agreement

Post argues—and Jean-Baptiste does not dispute—that this action falls within the arbitration agreement's scope. Def. Mem. (ECF 11-1) at 11-14. After reviewing the agreement, I agree. The agreement expressly subjects to arbitration "claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition or disability)." Def. Mot. Ex. A (ECF 11-2) at 3; Def. Mot. Ex. B (ECF 11-3) at 3. This dispute—a claim for discrimination on the basis of race and national origin—therefore falls within the arbitration agreement's scope.

### D. Waiver

Finally, Jean-Baptiste claims that Post waived its right to pursue arbitration under the agreement because it did not move to compel arbitration at the outset of the case. Pl. Opp'n (ECF 12) at 3-5.[9] "Waiver occurs where a party has intentionally relinquished or abandoned a known right." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) (cleaned up). "In analyzing whether waiver has occurred, a court focuses on the actions of the party who held the

---

[8] While "severability requires more than a count of the unconscionable provisions," courts assess the number of unconscionable terms together with their "nature." *Parilla*, 368 F.3d at 289. Here, there is only one. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 271 (3d Cir. 2003) ("Confronting only two illegal provisions, we emphasized that '[y]ou don't cut down the trunk of a tree because some of its branches are sickly.'" (quoting *Spinetti*, 324 F.3d at 214)).

[9] In service of her waiver arguments, Jean-Baptiste attempts to characterize Post's motion to compel arbitration as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). *See* Pl. Opp'n (ECF 12) at 3. As Jean-Baptiste points out, a Rule 12(b)(3) defense is waived if not asserted according to Fed. R. Civ. P. 12(h)(1). *Id.* But the Third Circuit has rejected this "creative theory," finding instead that its "prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004).

right and is informed by the circumstances and context of each case." *Id.* (cleaned up).[10]

The Third Circuit's analysis in *White* is instructive. In that case, Samsung sought to compel arbitration. It knew "from the outset of litigation . . . that plaintiffs' claims could be arbitrable." *Id.* at 340. Nonetheless, it filed a motion to dismiss on the merits and a motion for reconsideration, showing that it "clearly sought to have this case dismissed by a court on the merits" and only moved to compel arbitration when the court ruled against it. *Id.* Samsung also participated in "non-merits motion practice and acquiesced to the District Court's pre-trial orders." *Id.* It moved for pro hac vice admission, leave to file additional briefing, an extension of time, and certification of an interlocutory appeal. *Id.* It also "participated in numerous court conferences." *Id.* The Third Circuit held that, under those facts, Samsung had waived its right to arbitrate. *Id.* at 341.

The circumstances here, by contrast, do not suggest that Post "intentionally relinquished or abandoned a known right." *Id.* at 339 (cleaned up). Post moved to compel arbitration shortly after commencing discovery, when it claims that it first uncovered the arbitration agreement. Def. Reply (ECF 14) at 10. Unlike Samsung, Post did not seek rulings on the merits and then move to compel arbitration when it received unfavorable results. *See White*, 61 F.4th at 340; *see also Laguna v. Chester Hous. Auth.*, No. 22-1569, 2023 WL 2562984, at *2 (E.D. Pa. Mar. 17, 2023) (McHugh, J.) (noting that the party seeking arbitration "did not move to arbitrate [the plaintiff's] claims until *after* [the court] mostly denied its motion to dismiss on the merits").[11] Its motion to compel arbitration is its first and only substantive motion in this case. And while Post did submit to the initial stages of the litigation process by answering the Complaint, attending a scheduling

---

[10] The standard for waiver in arbitration cases recently changed. For decades, the Third Circuit used a multi-factor, prejudice-based test to assess waiver. *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926-27 (3d Cir. 1992). But the Supreme Court abrogated that line of cases in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), and the Third Circuit recognized this abrogation in *White v. Samsung Electronics America, Inc.*, 61 F.4th 334 (3d Cir. 2023).

[11] And unlike in other cases in this district, Post did not depose the plaintiff, *see Laguna*, 2023 WL 2562984, at *2, or file a related lawsuit in court, see *Stevens v. Equifax Info. Servs., LLC*, No. 21-4840, 2022 WL 4120282, at *4 (E.D. Pa. Sept. 9, 2022) (Sánchez, C.J.).

conference, and filing a disclosure statement and discovery plan, this participation was far less extensive and sustained than Samsung's. *See White*, 61 F.4th at 340 (describing significant non-merits motion practice and participation "in numerous court conferences"). In sum, Post's actions were not "so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 610 A.2d 499, 501 (Pa. Super. 1992).[12] It therefore did not waive its right to seek arbitration under the agreement.

### E. Staying the Action

Because the arbitration agreement is valid, this dispute falls within its scope, and Post did not waive its right to arbitrate, I must compel arbitration.[13] When a court compels arbitration, the Federal Arbitration Act provides that it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004). Post has applied for a stay, *see* Def. Mot. (ECF 11) at 1, so I will stay the action pending the completion of arbitration.

### III. CONCLUSION

---

[12] Other courts in this circuit have reached this conclusion under similar circumstances. *See Zenon v. Dover Downs, Inc.*, No. 21-1194, 2022 WL 2304118, at *2 (D. Del. June 27, 2022) (noting that a party's motion to compel arbitration "is its first substantive motion in this case"); *Zephyr Fluid Sols., LLC v. Scholle IPN Packaging, Inc.*, No. 22-475, 2023 WL 1795798, at *3 (D. Del. Feb. 7, 2023) ("[T]he case is in its early stages.").

[13] Other judges in this district have questioned the growing frequency of mandatory arbitration in employment disputes. *Porreca v. Rose Grp.*, No. 13-1674, 2013 WL 6498392, at *16 (E.D. Pa. Dec. 11, 2013) (Schiller, J.) ("There is a reason that arbitration is the favored venue of many businesses for deciding employment disputes, and it is not to ensure that employees are afforded the best chance to have their claims adjudicated by a judge or jury picked from the community."); *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 548-49 (E.D. Pa. 2018) (McHugh, J.) (describing empirical research showing that, when compelled to arbitrate, employees win at lower rates, win smaller awards, and often do not press claims at all). I share those concerns. But, like my colleagues, I will of course follow Supreme Court and Third Circuit precedent.

For the reasons discussed above, I will grant the motion to compel arbitration and stay this action. An appropriate order follows.

<div style="text-align: right;">
S/Anita B. Brody
ANITA B. BRODY, J.
</div>

Copies ecf _____ to:          Copies mailed _____ to: